IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| YOLANDE ZEITOUN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-423-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    Alan R. Unkeles
    1865 NW 169th Place, No. 121
    Beaverton, Oregon  97006

        Attorney for Plaintiff

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Britannia I. Hobbs
    Assistant United States Attorney
    1000 SW Third Avenue, Suite 600
    Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

David R. Johnson
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Yolande Zeitoun brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I reverse

the decision of the Commissioner.

## BACKGROUND

Zeitoun protectively filed an application for DIB on January 8, 2002, alleging disability

beginning September 15, 1997.  In order to be entitled to DIB, she needed to show disability on

or before December 31, 2002.  The application was denied initially and upon reconsideration.

After a timely request for a hearing, Zeitoun, represented by counsel, appeared and testified

before an Administrative Law Judge ("ALJ").  On January 30, 2004, the ALJ issued a decision

finding that Zeitoun was not disabled within the meaning of the Act and therefore not entitled to

benefits.  This decision became the final decision of the Commissioner when the Appeals

Council declined to review the decision of the ALJ.

Zeitoun appealed the decision to this court.  The Honorable Michael Hogan reversed and

remanded for further proceedings, instructing the ALJ to clarify plaintiff's residual functional

capacity with regard to lifting, walking, and ability to stand, and to evaluate how these limitations affect plaintiff's ability to work.  Zeitoun v. Commissioner, CV 04-1564-HO (Oct. 13, 2005).

On remand, Zeitoun, represented by counsel, appeared and testified before the ALJ on March 16, 2006.  On June 28, 2006, the ALJ issued a decision finding plaintiff not disabled.  The decision became the final decision of the Commissioner when the Appeals Counsel declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps. <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.

Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.    Zeitoun's History

Plaintiff was 49 years old on the date she alleged onset of her disability, and she was 54 years old on the date she was last insured. She graduated from high school, and obtained a two-year Associates Degree in nursing. Plaintiff worked as a registered nurse for 20 years, but stopped working in September of 1997.

Plaintiff complains of fatigue, non-stability of her sternum, inability to lift or reach over her head, and pain. She claims these symptoms are the result of mediastinal irradiation of her chest–treatment she received in the late 1970s to treat non-Hodgkin's lymphoma.

Ronald Naito, MD, has treated plaintiff since at least 1989, and saw her three to five times a year. In February 15, 2003, he wrote a letter discussing Zeitoun's diagnoses. He opined that Zeitoun suffers from asthma, limiting her ability to walk to about 600 feet on a good day. He also reported that Zeitoun suffers from chronic left ankle pain, which also limits her ability to walk. She underwent bypass surgery in October of 1999 as a result of coronary artery disease. The sternotomy site did not heal well after the surgery, resulting in chronic chest wall pain. She takes narcotics for the pain. He also reported that Zeitoun is significantly obese. He opined that Zeitoun could not work as a hospital or office nurse because the jobs would involve too much walking. Finally, he noted, "She might conceivably be able to do some kind of desk work as an R.N., however, I am not sure that she is interested in or suited to this type of work." Tr. 324.

Dr. Naito completed a residual functional capacity statement. He reported that plaintiff could handle moderate stress, that her prognosis is fair, and that he would not expect Zeitoun's symptoms to worsen. He determined that Zeitoun could walk three city blocks on good days, could sit more than two hours at a time, and did not need a job allowing her to shift positions. He noted, however, that prolonged sitting could cause her legs to swell. He suggested that Zeitoun could lift less than 10 pounds occasionally, could twist occasionally, but could only stoop, crouch and climb stairs rarely. She should avoid all exposure to fumes, gases, odors, dust, etc.

II.    The ALJ's Decision

The ALJ concluded that Zeitoun's obesity, aortic valve replacement sequelae, and chronic obstructive pulmonary disease (COPD) were severe impairments. He concluded Zeitoun could lift and carry ten pounds occasionally and five to ten pounds frequently. During an eight-hour

day, Zeitoun could stand for a maximum of ten minutes at a time, and walk for a maximum of

100 feet at a time, for up to two hours total.  The ALJ determined Zeitoun could sit for up to six

hours total, so long as she could periodically sit and stand to relieve discomfort, but could only

occasionally climb, balance, stoop, kneel, crouch and crawl.  She could not, however, reach

overhead, use ladders, ropes or scaffolds, and should avoid cold, heat, fumes, smoke, and dust.

As a result, while the ALJ concluded plaintiff could not perform her past relevant work,

he opined that she had transferable skills that she could use as a nurse case manager or a nurse

consultant.

## DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds.  Plaintiff argues that the ALJ

erred in his listing determination, did not make the requisite findings prior to finding Zeitoun had

skills from her past relevant work that were transferrable to other work in the national economy,

and inconsistently concluded plaintiff could perform work that requires reaching when he

determined her RFC contained a limitation for overhead reaching.  She also points out a

mathematical error in determining the number of jobs existing in the national economy, and

challenges the source for the VE's information.

I.    Listing Determination

Plaintiff argues that the ALJ's finding with regard to her RFC is inconsistent with his

conclusion that her impairments are not equivalent to any listed impairment.  Specifically, the

ALJ concluded that plaintiff was limited to walking a maximum of 100 feet at a time for up to

two hours in his analysis of plaintiff's RFC.  Plaintiff claims that this finding must result in a

conclusion that her COPD, valve replacement, and obesity, either alone or in combination, is equivalent to an orthopedic impairment because she is unable to ambulate effectively.

The listings set out at 20 CFR pt. 404, Subpart P, App. 1 are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). For a claimant to show that her impairment matches one of those listed, the impairment must meet all of the specified medical criteria. Id. at 530. Alternatively, a claimant may show that her unlisted impairment is "equivalent" to a listed impairment, but to do so she must present medical findings equal in severity to all the criteria for the one most similar listed impairment. Id. at 531. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526. If a claimant's impairment matches or is equivalent to a listed impairment, she is presumed unable to work and is awarded benefits without a determination whether she can actually perform prior work or other work. Sullivan, 493 U.S. at 532.

Zeitoun bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Obesity by itself will be deemed to equal a listed impairment when, for example, "the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings . . . ." Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, SSR 02-01p (2002). In addition, obesity in combination with other

Page 8 - OPINION AND ORDER

impairments may equal a listing if the combination is equivalent in severity to a listed impairment. The ALJ is required to "evaluate each case based on the information in the case record" and may not assume that obesity combined with other impairments increases functional limitations. Id.

Contrary to plaintiff's assertion, there is insufficient evidence in the record to support a conclusion that plaintiff was unable to ambulate effectively. Inability to ambulate effectively means "an extreme limitation of the ability to walk," an example of which is "the inability to walk a block at a reasonable pace on rough or uneven surfaces." 20 C.F.R. pt. 404, Subpart P, App. 1, 1.00B2b.[1] The only medical findings in the record are that plaintiff is able to walk 600 feet, or three blocks, on a good day. Dr. Naito made no finding about plaintiff's ability to ambulate on a day other than a good day.

It is true, as Zeitoun points out, that the ALJ concluded in the RFC that plaintiff could walk 100 feet at a time for up to two hours. According to plaintiff's research, a block is approximately 264 to 528 feet. As a result, Zeitoun argues that the ALJ's RFC finding conclusively shows her inability to ambulate effectively. It is unclear, however, how the ALJ concluded plaintiff's RFC should include a limitation of walking 100 feet, since the medical evidence found she could walk 600 feet on a good day. Plaintiff herself testified that she walked her dog about three blocks in 30 minutes to 45 minutes. Tr. 378. As a result, I cannot find, on

---

[1]The Commissioner's argument that "inability to ambulate effectively" requires an inability to walk "without the use of a hand-held assistive device(s) that limits the use of both upper extremities" is incorrect. The regulation gives examples of other ways a claimant may meet the criteria, including inability to walk a block at a reasonable pace.

the basis of this record, that plaintiff's RFC establishes her impairments are equivalent to a listing.

Contrary to the Commissioner's argument, I also cannot conclude that the ALJ's failure to address this issue is harmless error. The ALJ included in plaintiff's RFC a limitation on her ability to walk, which could mean the ALJ believed plaintiff was unable to ambulate effectively. As a result, the ALJ erred in failing to address this issue.

II.    Transferability of Work Skills

Plaintiff argues the ALJ failed to indicate how he applied the regulatory criteria governing decisions about transferability of skills. The regulation provides,

> Transferability is most probable and meaningful among jobs in which–
> (i) The same or a lesser degree of skill is required;
> (ii) The same or similar tools and machines are used; and
> (iii) The same or similar raw materials, products, processes, or services are involved.

20 C.F.R. § 404.1568(d)(2).

As the Commissioner points out, the regulation does not describe any required criteria the ALJ must apply. Rather, the regulation describes when transferability "is most probable and meaningful[.]" Id. The ALJ must specify "the acquired work skills" and the "specific occupations to which the acquired work skills are transferrable[.]" Titles II and XVI: Work Skills and their Transferability as Intended by the Expanded Vocational Factors Regulations, SSR 82-41 (1979).

Here, the ALJ stated his reliance on the testimony of the VE to find plaintiff had skills that were transferable to the jobs of nurse case manager and nurse consultant. The ALJ also concluded that plaintiff's skills as a nurse were sufficiently similar to those of a nurse consultant

Page 10 - OPINION AND ORDER

to be transferable to that job.  The transcript from the hearing reveals that the VE identified the following skills that would transfer to the jobs of nurse consultant and nurse case manager:  oral and written comprehension and communication, ability to analyze medical data, skill in providing general care to patients, skill in administering medication, skill in reviewing charts, skill in charting medical data, skill in interacting with medical professionals, skill in observing patients and recording information, skill in taking vital signs, skill in making reports, skill in decision-making, skill in coordinating activities, skill in directing people or events, skill in complex problem-solving, skill in dealing with people, skill in supervising or mentoring nurse assistants, and skill in helping others.  The VE explained that these skills would transfer to the tasks Zeitoun would be required to perform as a nurse consultant or nurse case manager.

The ALJ did not err in his transferability analysis.

III.    Residual Functional Capacity

Plaintiff challenges the ALJ's conclusion that she could perform work as a nurse consultant, a job which requires occasional reaching, when plaintiff's RFC prohibits her from reaching or lifting above the shoulder.  Plaintiff argues SSR 00-04p requires the ALJ to resolve any contradictions between the DOT and the VE's testimony.  The ALJ never asked the VE if her testimony conflicted with the DOT.

The Commissioner argues that the DOT does not indicate in which direction reaching is required and asserts that the reaching is at desk level given the duties listed in the description. The Commissioner also contends that the ALJ relied on the VE's specialized knowledge, and the VE identified a job within the limits of plaintiff's RFC.  The Commissioner asserts that the VE's description was more complete than the DOT.  Since there was no conflict, the ALJ did not need

to specifically note the conflict and question the VE about her testimony.  Alternatively, the

Commissioner contends, even if the ALJ erred, plaintiff does not argue a conflict exists with the

nurse case manager job.

> The SSR directs that,
>
> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. . . .
>
> The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Titles II and XVI:  Use of Vocational Expert and Vocational Specialist Evidence, and Other

Reliable Occupational Information in Disability Decisions, SSR 00-4p (2000).

Plaintiff replies that the DOT description does not state that the occasional reaching is

limited to desk-level; the DOT defines reaching to mean to extend the hands and arms in any

direction.  Plaintiff suggests that job duties of advising, reviewing, planning and preparing

materials might require such tasks as raising a hand at a meeting, making notes on a whiteboard,

or creating exhibits, all of which involve overhead reaching.  As a result, the ALJ was required to

resolve the conflict between the DOT and the VE's testimony.

There is nothing in the record from which I can conclude the VE's testimony was more

complete than the DOT.  The ALJ should have asked the VE about this potential conflict

between the DOT and her testimony.  As a result, the ALJ's conclusion that plaintiff can perform

the job of nurse consultant is not supported by substantial evidence.

IV.     Number of Jobs in the National Economy and Information Source

Plaintiff points out that the VE made a mathematical error in calculating the number of nurse consultant and nurse manager jobs existing in the national economy–an error which the ALJ carried over into his decision.  In her testimony, the VE stated that she determined the number of jobs regionally and then, using the regional number, calculated the number of jobs in the national economy considering that Oregon represented one percent of the national economy. Her actual calculation was incorrect.

Applying the correct one percent extrapolation, the number of nurse case manager jobs in the national economy is 15,000 and the number of nurse consultants is 8,000, rather than the 150,000 and 80,000 the VE represented.  It remains for the ALJ to determine whether this is a significant number of jobs in the national economy.

In addition, plaintiff complains that the source for these jobs, the United States Department of Labor Division and Skills Assessment and Analysis, The Missouri Occupational Analysis Field Center, O-Net or Occupational Information Network, is not an adjunct of the DOT as the VE represented.  Plaintiff argues the agency does not recognize it as a vocational resource. The agency takes administrative notice of "reliable job information available from various governmental and other publications." 20 C.F.R. § 404.1566(d).  The regulation goes on to identify some "example" publications the agency considers.  Plaintiff argues the regulation does not cite Occupational Information Network as a vocational resource.

Plaintiff misreads the regulation.  First of all, the regulation identifies example publications containing job information of which the ALJ may take *administrative notice*. Alternatively, the ALJ "may use the services of a vocational expert or other specialist."  20

C.F.R. § 404.1566(e).  The VE is not limited in the publications on which she can rely, and

plaintiff has not argued that the Occupational Information Network is an unreliable resource.

In sum, although the ALJ did not err in relying on the VE's testimony based in part on the

Occupational Information Network, the VE's mathematical error resulted in a lack of substantial

evidence supporting his conclusion that a significant number of jobs existed in the national

economy.

V.      Reverse and Remand for Further Hearing

Plaintiff asserts that a remand for a finding of disability is appropriate here.

The court has the discretion to remand the case for additional evidence and findings or to

award benefits.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit

evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons

for rejecting the evidence, there are no issues to be resolved before a determination of disability

can be made, and it is clear from the record that the ALJ would be required to find the claimant

disabled if the evidence is credited.  Id.  If this test is satisfied, remand for payment of benefits is

warranted regardless of whether the ALJ might have articulated a justification for rejecting the

evidence.  Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the

Ninth Circuit, however.  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).  The court has

the flexibility to remand to allow the ALJ to make further determinations, including

reconsidering the credibility of the claimant.  Id.

As I noted above, it is not clear from the record that the ALJ would be required to

conclude that plaintiff is unable to ambulate effectively, and therefore equals the orthopedic

listing.  The medical evidence, and plaintiff's own testimony, do not support her claim that she is

unable to ambulate effectively.  Nevertheless, the ALJ's conclusion about plaintiff's RFC makes

it possible that plaintiff's impairments equal a listing.  In addition, with the VE's conflicted

testimony on plaintiff's ability to do the nurse consultant job, even with her limitation on

overhead reaching, and the VE's mathematical error on the number of jobs in the national

economy, it is not clear from the record that plaintiff is disabled.  Accordingly, a remand for

further findings is appropriate.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) to further develop the record as

explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____18th_____ day of March, 2008.


___/s/ Garr M. King_____
Garr M. King
United States District Judge